IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



FILED
DEC 31 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| HERMAN D. STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Numbers |
| | ) 01-C-1969-S |
| MEL R. MARTINEZ, as Secretary of the | ) 01-C-2592-S |
| United States Department of Housing and | ) 01-C-2965-S |
| Urban Development, | ) |
| | ) |
| Defendant. | ) |
| | ) |

ENTERED
JAN 6 2003

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

Before this Court is Defendant Mel R. Martinez's Motion For Summary Judgment (Document 23). Plaintiff has filed no formal response to the motion. For the reasons elaborated herein, this Court will grant the motion.

### I. Statement of the Facts

This lawsuit is a consolidation of three separate lawsuits filed by Plaintiff Herman D. Stewart ("Stewart") against the Secretary of the Department of Housing and Urban Development ("HUD") alleging employment discrimination.

Plaintiff's allegations include claims of race, sex, and age discrimination, retaliation, a pattern and practice of discrimination, and a hostile work environment claim in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act



("ADEA"), 29 U.S.C. § 633a.[1]

Plaintiff is a fifty-two (52) year old African-American male. Since 1980, Plaintiff has worked as a GS-12 Auditor in the Department of Housing and Urban Development's Office of Inspector General ("HUD OIG") in Birmingham, Alabama.

Plaintiff's Complaint asserts that he was the victim of discrimination in the following particulars: 1) unsatisfactory performance ratings for several years, 2) being placed on Performance Improvement Plans, 3) receiving a five-day suspension, 4) being required by his supervisor to take vacation time for time actually worked, 5) his non-selection for a promotion from a GS-12 to GS-13 auditor position, 5) a racially hostile work environment, 6) retaliation for filing discrimination complaints with HUD's Director of Equal Employment Opportunity in September, 1996 and June, 1997 and as well as for requesting a Collateral Duty EEO Counselor on July 31, 1997.

In total, Plaintiff filed seven Equal Employment Opportunity ("EEO") administrative complaints of discrimination between 1996 and 1999.

### 1. Agency Complaint AT-96-04

In the first of these complaints, Plaintiff alleged that he was discriminated against based upon his race and sex when he was not selected for a GS-13 auditor position in Atlanta. Plaintiff was one of thirteen candidates on the list of best-qualified candidates for the Auditor position in Atlanta. One of those candidates withdrew his candidacy when he accepted another position. The race and sex of the remaining twelve candidates, including Plaintiff, were, as follows: 2 white females, 3 white

---

[1] Plaintiff cites 42 U.S.C. § 1983 as an additional basis for jurisdiction. However, section 1983 provides no basis for subject matter jurisdiction, as Title VII is "the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976).

males, 2 black males, 1 Hispanic female, and 4 males ethnic background unknown.

Ultimately, Plaintiff was not selected for the auditor position in Atlanta. Instead, selecting official Kathryn Kuhl-Inclan chose Stephen Nolan for the position. In reaching this decision, . Kuhl-Inclan opined that Plaintiff was, at best, an "adequate" candidate. Kuhl-Inclan noted that Plaintiff had some performance problems within the last few years. She described Plaintiff as "a loner" and indicated that, in her judgment, he was not an appropriate choice for an auditor to organize and direct larger groups of staff. Based on prior performance concerns, she concluded that Plaintiff would not be a good choice to manage large, complicated audits. Kuhl-Inclan evaluated one of Plaintiff's comments during the interview to be "very negative." When asked about his greatest achievement during his professional career, Plaintiff's response was that his greatest achievement was "just surviving."

In contrast, Kuhl-Inclan found Mr. Nolan to be a team player, that he worked well with others, and he demonstrated the ability to supervise and direct complicated audits and to manage larger groups of staff. In support of this conclusion, Nolan reported serving as the Auditor-in-Charge of seven of his last nine assignments.

On September 9, 1999, the Agency issued the Final Agency Decision finding no discrimination in Agency Complaint AT-96-04.

### 2. Agency Complaint AT-97-18

Plaintiff alleged he was discriminated against based on race and in reprisal for prior EEO protected activity when he was rated as marginally successful for the period February 1, 1996 through January 31, 1997 on his annual evaluation. Of the six areas of performance evaluated, Plaintiff received the following evaluations: 3 areas had a rating of "NB," denoting no basis for

evaluation; 1 area had a rating of "fully successful"; and 2 areas had a rating of "marginally successful." (Stewart Dep. at Ex. 13.) In the accompanying narrative to the evaluation, Plaintiff's work was "generally satisfactory" on several assignments for "Audit Execution," (evaluation area 3), though his "poor performance" on "his most significant job," an audit of the City of Gulfport, Mississippi Community Development Block Grant Program, resulted in actions that "hindered rather than helped the assignment." (*Id.*) Additionally, the evaluation noted that Plaintiff "did not demonstrate a good working relationship with other members of the audit staff," "was uncooperative and argumentative throughout the assignment," and "brought the credibility of the entire team into question by his actions." (*Id.*)

Plaintiff received a "fully successful" rating on three assignments other than the assignment in Gulfport, Mississippi.

The Agency's Final Agency Decision for Agency Complaint AT-97-18 was consolidated with Agency Complaint AT-96-04 *supra* and issued on September 9, 1999.

### 3. Agency Complaint AT-97-25

Plaintiff alleged that he was discriminated against when he was suspended for misconduct from June 30 to July 4, 1997. Plaintiff's reviewing official, Ms. Cooper, issued a proposal on April 14, 1997 to suspend Plaintiff. The proposal was for a ten-day suspension and included the following five charges: 1) destruction of government computer programs while a computer was in Plaintiff's custody; 2) inappropriate actions while conducting the City of Gulfport, Mississippi audit; 3) disrespect toward Senior Auditor Durick; 4) insolent behavior; and 5) an uncooperative attitude.

On June 9, 1997, Kuhl-Inclan issued the Decision on Proposed Suspension in which the first charge was resolved, charges two through five were sustained, and the term of suspension was

reduced from ten to five days.

In support of this five-day suspension, Ms. Kuhl-Inclan noted the following actions taken by Plaintiff: inquiring about auditee official Carey Bundt's personal affairs; stating to the auditee that he did not know how to do his job and asking the auditee, rather than his supervisor, for guidance; causing racial tension among the auditee staff; taking pictures of the auditee's offices without permission or cause; making threatening comments to an auditee official about seeing him in court (referring to an unrelated civil lawsuit); publicly demonstrating disrespect to a superior; acting insolent over instructions as to how to do his work; acting insolent about giving his supervisor the name of his attorney whom he had referred his supervisor to talk to; being uncooperative when asked to give his supervisor equipment that belonged to the Agency; and acting uncooperative when asked to give the supervisor the photographs taken of the auditee's offices.

On May 17, 2000, the Agency issued the Final Agency Decision finding no discrimination in Agency Complaint AT-97-25. Plaintiff appealed this decision on June 26, 2000 and the appeal was dismissed.

### 4. Agency Complaint AT-98-01/AT-98-01-R

Plaintiff alleges race, sex, age, and reprisal discrimination when his rating official for this period, McBee, required Plaintiff to: take five hours of annual leave for time spent traveling to Alma, Georgia on June 16, 1997; and to take three days of annual leave for time spent working in Birmingham on July 8, 10, and 11, 1997. For several months in 1997, Plaintiff was assigned to an audit of the Alma, Georgia Housing Authority with Narcell Stamps (Senior Auditor, GS-13) and Mignon White (Auditor, Team Leader, GS-12. Both Stamps and White are African-American. The applicable policy applied to all auditors required employees assigned to temporary duty to either

5

return to their permanent duty stations on their own time or to take leave to travel unless the travel was at the request of OIG management or during non-duty hours.

On Friday, June 13, 1997, Plaintiff returned home to Birmingham for the weekend, leaving work two hours early. McBee did not require Plaintiff to take two hours of leave on Friday, June 13, 1997, because Plaintiff advised that his co-workers leave the job site and there was a directive that the auditors not work alone at that site. Plaintiff did not return to work in Alma by the following Monday morning. Instead, he went to a dentist appointment in Birmingham. While Plaintiff had requested two hours of sick leave for that date, he spent the remainder of the day in travel to Alma. Following a disagreement between Plaintiff and McBee regarding accounting for Plaintiff's time on Monday, June 16, 1997, Plaintiff agreed to take two hours of sick leave and the rest of the day as annual leave.

During the week of July 7-11, 1997, Plaintiff worked in the Birmingham office and charged five workdays to "indirect work." When asked about accounting for 38 out of 40 hours to indirect work, Plaintiff explained that he had spent the time reading his mail, reviewing his performance evaluation, and other general tasks. (*Id.*) McBee allegedly told Plaintiff that charging 38 out of 40 hours in a work-week to "indirect time" was unacceptable, but he also told Plaintiff that taking annual leave for the entire week was not necessary. Plaintiff subsequently used annual leave to account for three of the five days: July 8, 10, and 11, 1997.

After a remand by the Equal Employment Opportunity Commission ("EEOC"), the Agency issued a Final Agency Decision finding no discrimination in Agency Complaint AT-98-01-R on May 2, 2001.

5. Agency Complaint AT-98-06

Plaintiff alleges race and reprisal discrimination based upon his receipt of an annual performance rating of "marginally successful" for the period February 1, 1997 through January 31, 1998. Once again, Plaintiff's rating official was McBee, and his reviewing official was a Ms. Cooper. Of the six categories evaluated on the performance evaluation, Plaintiff received ratings of "fully successful" in three categories and "marginally successful" in the other three categories. In the accompanying narrative for "Audit Execution," Plaintiff received negative ratings on the Clarksdale review and the "complaint in Shades Valley." Plaintiff was also evaluated poorly in the areas of Audit Report Process (where Plaintiff's Clarksdale "report preparation was inadequate" and "[t]he Senior Auditor had to totally rewrite the draft to logically present the results of work performed"); and in the area of Audit Management (where Plaintiff's supervisor noted the need for Plaintiff to "more timely perform administrative duties related to audit work.")

The Agency's Final Agency Decision for Agency Complaint AT-98-06 was consolidated with complaints AT-98-01/AT-98-01-R and AT-97-18 and was issued on September 9, 1999, in which the Agency found no discrimination.

6. Agency Complaint AT-99-14

Plaintiff complains that he was discriminated against based on race, age, and in reprisal for prior protected activity when the Agency 1) placed him on an Opportunity to Improve Plan for three elements in his performance appraisal; 2) placed him on a Performance Improvement Plan for three remaining elements of his performance appraisal; 3) rated him "Marginally Successful" for an audit (Willow Park Apartments); 4) failed to provide him with end of assignment evaluations for audits of two housing complexes (Eastover Apartments and Vicksburg Housing Authority); 5) obtaining and using a copy of his partially completed annual performance appraisal for the period of February

7

1, 1998 to January 31, 1999, thereby violating the Privacy Act; 6) constantly interfered with [him] in the performance of his work; 7) subjected him to ongoing criticism; and 8) made false and/or misleading statements causing or justifying adverse personnel actions and working conditions.

Plaintiff's performance was rated as "Unacceptable" for the period February 1, 1998 through January 31, 1999. Of the six categories evaluated, Plaintiff received a rating of "unacceptable" in three categories, and a rating of "marginally successful" in the other three categories. Plaintiff's reviewing official, Cooper, issued to Plaintiff a six-page, single-spaced Opportunity to Improve Notice on May 3, 1999. Additionally, Cooper issued a memorandum to Plaintiff in which she set out "the specific performance standards and a plan for achieving a Fully Successful level of performance" in the three categories for which Plaintiff received a rating of "marginally successful."

The Agency issued a Final Agency Decision on the claims in Agency Complaint AT-99-14 on May 24, 2000. Plaintiff appealed to the EEOC, and it affirmed the Final Agency Decision. On the eight issues identified in Plaintiff's Agency Complaint AT-99-14, the EEOC made the following dispositions: the first two issues were dismissed because they concerned preliminary steps to a personnel action that would not sustain a claim in accordance with 29 C.F.R. § 1614.107(a)(5)); the third issue was dismissed as it had previously been raised in Agency Complaint AT-98-06; and the fourth through eighth issues were not brought to the attention of an EEO counselor. (*Id.*)

### 7. Agency Complaint AT-00-01

Plaintiff alleges that he was discriminated against based upon his race and age when he did not receive a non-competitive promotion to a GS-13 Auditor position. In order to be non-competitively promoted from the GS-12 to GS-13 level, an auditor was required to have a performance rating of at least "Fully Satisfactory" or "Fully Successful." Additionally, in order to

8

be non-competitively promoted from the GS-12 to the GS-13 level, the auditor's supervisor is required to certify that the employee has a current summary performance rating of Fully Successful or higher. In light of the fact that Plaintiff received a performance rating of "unacceptable," received an official "Opportunity to Improve Notice," and was placed on a "Performance Improvement Plan," Plaintiff did not satisfy the requirements for non-competitive promotion to the GS-13 level.

The Agency issued a Final Agency Decision on this claim on August 15, 2001.

## II. The Applicable Law

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c). The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.[2] *See, e.g., Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir. 1997). The Eleventh Circuit has held that evidence that is merely colorable, conclusory,

---

[2] "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' ... and draw 'all justifiable inferences ... in his favor ...." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).

or conjectural does not create a genuine issue of material fact. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

### III. ANALYSIS

#### A. Exhaustion

Jurisdiction of this Court over Title VII claims brought against the Secretary of the Department of Housing and Urban Development rests upon 42 U.S.C. § 2000e-16. Section 2000e-16(c) authorizes a federal employee to commence a Title VII claim in federal court only if that employee has pursued a complaint with his employing agency and has either obtained an unfavorable final disposition or has been unable to obtain a timely decision.

Applying the exhaustion standard to the facts at hand, Plaintiff did not present the following claims to the agency for its consideration: failing to provide Plaintiff with end of assignment evaluations for the audits of two housing complexes; violating the Privacy Act and obtaining and using a copy of his partially completed annual performance appraisal for the period of February 1, 1998 to January 31, 1999; constant interference with Plaintiff in the performance of his work; being subjected to ongoing criticism; and making false and/or misleading statements causing or justifying adverse personnel actions and working conditions.

Based on Plaintiff's failure to raise and administratively exhaust potential remedies regarding these claims, this Court will grant summary judgment as to these claims.

#### B. Statute of Limitations

The following claims are barred by the statute of limitations based on Plaintiff's failure to file a civil action within ninety days after receipt of the September 9, 1999, Final Agency Decision

10

on Agency Complaints AT-96-04, AT-97-18, and AT 98-06: 1) non-selection for a competitive GS-13 auditor position, 2) miscellaneous pattern and practice of race discrimination; 3) marginally successful annual performance rating for February 1996 to January 1997 and the retrieval of Plaintiff's laptop computer; 4) marginally successful performance ratings and ongoing harassment.

Plaintiff filed this civil action on August 6, 2001, – approximately 18 months past the deadline imposed by 29 C.F.R. § 1614.407. *See also* 42 U.S.C. § 2000e-16(c).[3]

Based on Plaintiff's failure to timely appeal each of the administrative complaints, summary judgment will be granted on those claims.

### C. Plaintiff's Race, Sex, and Age Discrimination Claims

Federal law governing allegations of discrimination in the workplace is well settled. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). There is a three-part test under the traditional *McDonnell Douglas* burden-shifting analysis. First, a Plaintiff must establish a *prima facie* case of discrimination. Next, Defendant must articulate a legitimate, non-discriminatory reason for the challenged decision. *See, e.g, McDonnell Douglas Corp. v. Green*, 411 U.S. at 803; *see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Finally, Plaintiff must present evidence that Defendant's reason is a pretext for unlawful discrimination. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973); *Reeves v. Sanderson Plumbing Prod., Inc.*, 120 S. Ct. 2097, 2108-09 (2000).

In order to establish a *prima facie* case of race discrimination, Plaintiff must show that: (1)

---

[3] The Final Agency Decision was issued on September 9, 1999. Accordingly, Plaintiff should have filed this lawsuit in December, 1999 rather than August, 2001.

he is a member of a protected class; (2) he was qualified for the position; (3) he was terminated or disciplined; and (4) similarly situated employees outside of the protected class were treated more favorably, or, in the case of discharge, that Defendant replaced Plaintiff with an individual outside of the protected class. *McDonnell Douglas Corp v. Green*, 411 U.S. at 802.

The Eleventh Circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas Corp. v. Green*. A Plaintiff successfully establishes a *prima facie* case of discrimination where the Plaintiff demonstrates: (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position; and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of race, age, or sex in reaching that decision. *See, e.g., Jameson v. Arrow Company*, 75 F.3d 1528, 1531-32 (11th Cir. 1996); *Earley v. Champion Intern Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

In a private sector retaliation case, *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998), the Court held "Title VII's protections against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions."[4] Consistent with the decision in *Wideman* and assuming *arguendo* that Plaintiff in the case at bar suffered adverse employment

---

[4] Note, however, that the *Wideman* court specifically distinguished the federal employment situation from the private sector employment situation. When the private defendant in *Wideman* cited *Page v. Bolger*, 645 F.2d 227 (4th Cir. 1981), the seminal federal sector case involving adverse personnel actions in support of its position, the Eleventh Circuit noted: "[w]e find that case inapposite because it did not involve a case arising under 42 U.S.C. § 2000-e-3(a). Instead, it involved a claim of denial of promotion on the basis of race under 42 U.S.C. § 2000e-16." *Wideman*, 141 F.3d at 1456 n.2. Likewise, in *Lucas v. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001), the Court held that "[n]egative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a *prima facie* case of retaliation under the ADA."

actions (by receiving an Opportunity to Improve Notice and Performance Improvement Plan), Plaintiff has failed to establish either that he was: (1) qualified for the position he held (GS-12 Auditor); or (2) that similarly situated employees outside of the protected class were treated more favorably. *McDonnell Douglas Corp v. Green*, 411 U.S. at 802.

Plaintiff has failed to provide evidence by which a fact finder could reasonably conclude that the employer intended to discriminate him on the basis of race, age, or sex in reaching the decision to suspend Plaintiff.[5]

In short, Plaintiff has failed to establish a *prima facie* case of gender or race discrimination.. Accordingly, Defendant's Motion for Summary Judgment on these claims will be granted.

### D. Hostile Work Environment

Plaintiff claims that he was subjected to a hostile working environment. Under extant Eleventh Circuit law as articulated in *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002):

> A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment

---

[5] Plaintiff asserts that he was required to take three days of vacation time for time spent working at his official duty station. (1st Complaint at ¶ 3.) Here, Plaintiff alleges disparate treatment, wherein three white employees (Mr. Hoyle Seat, Mr. Maxie Walls, and Ms. Kathy Youngblood) were not required to take vacation time for time actually worked. (*See* Defendant's Exhibit 3, Complaint in CV-01-H-1969-S, p. 3 ¶ 3; *see also* Plaintiff's Stipulation at p. 61) However, Defendant offers a legitimate, non-discriminatory reason for the challenged decision – namely, that Plaintiff accounted 38 of 40 hours in a work-week as having been spent on "indirect work." When asked about accounting for 38 out of 40 hours to indirect work, Plaintiff explained that he had spent the time reading his mail, reviewing his performance evaluation, and other general tasks. (*Id.*) Plaintiff subsequently used annual leave to account for three of the five days: July 8, 10, and 11, 1997. (*Id.*) Plaintiff provided no evidence to suggest that the three days of vacation time were a pretext for discrimination or that similarly situated employees outside of the protected class were treated more favorably than Plaintiff.

and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). This court has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability. [Citation omitted].

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

One of Plaintiff's co-workers, fellow auditor Kathy Youngblood, used the government e-mail system to make racist and inappropriate comments to a fellow male employee. The agency promptly responded: Assistant District Inspector General for Audit Cooper sent Youngblood a letter proposing to suspend her without pay for three calendar days. In that letter, Cooper wrote:

> Your excuse for the racial slur and such hateful language in your cc:Mail message was that you were angered by Ms. Trimble's comment at lunch. This is not an acceptable excuse, nor is there an acceptable excuse for such a message. The use of offensive, racist remarks are highly inappropriate and I will not tolerate racial remarks from my staff."

The Defendant did what the law requires it to do. The racism of Youngblood is thus not attributable to the Defendant.

As Plaintiff offered no substantial evidence of a hostile work environment, summary judgment on that claim is appropriate.

## CONCLUSION

By separate order, the Defendant's motion for summary judgment will be granted.

Done this 31st day of December, 2002.

*[signature]*

Chief United States District Judge
U.W. Clemon